Appeal No. 25-22-23 All right, Mr. Edelman. May it please the court, counsel, I'm Daniel Edelman representing Ms. Degrasse. I believe I reserved several minutes for rebuttal. Anyway, in enacting the Biometric Information Privacy Act, the Illinois General Assembly determined that Illinois residents should not have facial scans or other biometric information collected without being first informed in writing what information is being collected, why, and how long it will be retained and to consent in writing. The operative section of the statute 14 forward slash 15B states that no private entity may collect or capture biometric information without these disclosures. The statute separately regulates storing, transmitting, and safeguarding biometric information, but the question here is collection and capture. Hyundai installs cameras in some of its cars as part of a driver monitoring system called Forward Attention Warning System. The camera captures the facial geometry of the driver, which is by definition subject to the statute. Hyundai controls the software governing what the system does and updates it. In Plaintiff's case when she brought the vehicle in for service, the purchaser is told nothing about the system capturing biometric information. Can you back up? You just indicated that Hyundai controlled the software. I got you there. How does Hyundai control the actual biometric data? Hyundai programs its camera to capture the biometric data and the software which Hyundai has installed processes it. It monitors it over a period of blocks of 30 seconds and evaluates it. The results of the evaluation are recorded in the black box or computer in the vehicle. But Hyundai isn't evaluating it. That's all still in the car. How does Hyundai control the data? Well, first it's not required. The camera is collecting or capturing biometric information. The consumer, the purchaser, is not told of this at all. The district court thought that this was akin to a case where I sell you an app which has as its only function using your fingerprint or a retinal scan to open a phone or a device, in which case the consumer controls the operation of the device. This isn't the case here. We contend that the action of Hyundai's device is the action of Hyundai unless and until it transfers the device to someone who is informed of what it is and what it does, and specifically that it captures biometric information. And I think this is consistent with all of the cases. The district court relied on the app cases. It cited cases where I sell you, a business sells you a fingerprint scanner or similar device, in which case the purchaser is fully aware of what the device is that they have purchased, and it becomes incumbent upon them to comply with BIPA. Can we back up before you continue on in your discussion of the cases? I saw in your initial amended complaint, you have the allegations about Hyundai's privacy policy, and it's saying, you collect biometric data. Have you preserved your argument that your complaint should not have been dismissed because of the disclosures in Hyundai's privacy policy, basically admitting they collect or telling consumers they collect biometric data? Hyundai claimed and supplied some information that this vehicle wasn't equipped with Bluetooth and therefore it could not be transmitted outside the vehicle. Our position is that it is not necessary, given the text of the statute, to show transmission. The relevant section simply says collect and capture. The issue is whether the action of Hyundai's camera and Hyundai's hardware and software is the action of Hyundai or, the district court seemed to hold, the action of the purchaser, even though the purchaser knows nothing about the operation of the device or its capture of biometric information. I want to make sure I'm following you. You're saying so that's irrelevant to what even Hyundai's privacy policy communicated to customers saying we collect biometric data. We flatly allege that Hyundai's device captures biometric data. It operates using a facial scan. Hyundai is supposed to disclose to the consumer what it does with the information. It doesn't. It tells the consumer nothing. We contend that under those circumstances, the actions of Hyundai's camera are the actions of Hyundai. Even though it's owned by the plaintiff, right? I'm sorry? Even though the camera is owned by the plaintiff. In a theoretical sense. Well, in a legal sense, yes. Could I ask you, Mr. Edelman, what is the injury here sufficient for standing? The injury is the invasion of plaintiff's privacy. By a device that she owns storing information in her car. What would have to happen for the defendant or anyone else to access the data that's stored in that black box? It certainly can be, assume you have an accident. In investigating the accident, a dealer, Hyundai itself, or law enforcement, can physically connect to the vehicle and remove the fact that the person was inattentive at various times, just like any other. Does that download require the owner's consent? The driver's consent? It requires access to the vehicle. Legally, under BIPA, do you think it consent? The consent should have been given in advance. I understand that's your position. I'm asking in the context, but... I would say yes. Okay. Suppose the plaintiff lent her car to a friend, and while her friend is driving her car, these images are taken and stored on the car. Would that mean that the owner of the car has violated BIPA? I would say no, because until Hyundai, by informing the owner of the car that it collects biometric information, divests itself over the camera, it remains Hyundai's device. Well, does BIPA have a mens rea requirement? It does. Okay, thank you. I will save the remainder of my time for rebuttal unless there's some questions. Thank you. We welcome Mr. Ostfeld to the podium. Thank you. Greg Ostfeld on behalf of Hyundai Motor America. May it please the Court and Counsel. Respectfully, this appeal really turns, begins, and ends on the plain language of Section 15B. The Illinois Supreme Court in the Kothron case made clear that Section 15B is comprised of active verbs, and I think importantly, it also specifies the actor. It says no private entity. That is the actor. And the active verbs are collect, capture, and otherwise obtain. What the Illinois Supreme Court said in Kothron is quite accurate. These active verbs imply, indicate, gaining control. So what Section 15B requires by its plain terms is the private actor who is the defendant, in this case Hyundai Motor America, must gain control of the biometric identifier or the biometric information. Do you know how long the data remains in the system after it's created? It's not alleged on the face of the complaint how long the data remains. The reality is the data does not remain in the system. And for this case to go forward in the discovery, that would be a relatively important fact. But it is not on the face of the complaint, therefore it has not arisen in the course of the dismissal briefing papers. The district court correctly held that the complaint in this case is absent in the allegations that Hyundai Motor America ever acquired or gained control of Ms. DeGrasse's biometric identifier or biometric information, and it clearly could not have. The biometrics on the face of the complaint remain on the vehicle. They don't depart the vehicle. Yes, Judge. Why isn't it that the allegations that even Hyundai's privacy policy says it collects biometric data enough to give rise to a plausible inference that they have control of the data? Judge, you asked Mr. Edelman if that issue had been preserved on appeal. I think the answer to that is it hasn't been because the issue wasn't raised by the appellant on appeal. But if it had been, I think Judge Cannelli got this right in his opinion where he wrote, the cited privacy policy says nothing about data collected from the FAS functionality. And the fact that Hyundai has disclosed other user data in the past is not either by itself or with other allegations plausibly indicate that it is doing this with FAS data. I think that's the key point here. This complaint is about a specific device, the FAS device. What compels us at this stage, this motion to dismiss stage, to read that statement in the privacy policy narrowly versus broadly? It broadly says we collect. It doesn't mention any of the cars, many different technologies. I take your point it doesn't mention the Ford attention warning system, but it doesn't mention anything, and the cars do a lot. So why at a motion to dismiss would we read it that so narrowly? Understood, Your Honor. And I think it needs to be read in the context of the other allegations of the complaint on which plaintiff does rely. There were allegations in the complaint that says, with respect to the FAS system, and these are particularized allegations to FAS, it hypothesizes that the information on FAS could be accessed perhaps at a dealership, or it could be accessed through a Blue Link system, which plaintiff does not allege was active in her vehicle. So I think the allegation that Hyundai has a generalized privacy policy that discusses biometrics has to be taken in conjunction with the actual allegations of the complaint that say, as to this system, the data, as Judge Cannelli put it, is essentially somewhere out there on the system and could hypothetically be accessed by Hyundai through some other means, perhaps on a service visit or via the Blue Link system without an allegation that that was actually done here. So when you take the complaint as a whole, I think that provides an explanation as to why the issue was not raised on appeal, because I think the plaintiff understands that that privacy policy is not, cannot be read as pertaining to the FAS system, which resides on plaintiff's vehicle and does not transmit outside of the vehicle. And there is no allegation that in this instance that Hyundai Motor America ever acquired or gained control of this plaintiff's biometric data, which is the essential link that is needed in Section 15b to provide the nexus to the statutory text. It is the private actor that must be invoked and the action that must be taken in order for this plaintiff to proceed. So what happens in the case of an accident in accessing data? How does that happen and does it have implications for complying with the Illinois Act? The complaint contains a conjectural allegation that law enforcement could perhaps gain access to data on the FAS system. Yeah, it's possible. So I assume that that's the allegation you're alluding to. I'm less worried about the specific allegation and more about how this works. All right. So in that instance, hypothetically, if law enforcement could gain access to data stored on the FAS system, that wouldn't be a violation of BIPA, because in that instance it wouldn't be a private entity that is acquiring possession or control of the biometric information or the biometric identifier. So it would not, in that instance, be a matter for BIPA to be invoked, because you have a law enforcement agency, a public entity, gaining access. And there may be other constitutional requirements for law enforcement to do that, but BIPA does not require a law enforcement agency to do anything to gain access to private data. My position is they wouldn't be gaining access from Hyundai? Who would they be gaining access from in that hypothetical? Well, what I'm constrained with here, judges, I actually have the knowledge that law enforcement can't access what's on that system, because there's nothing stored on that system. But in a hypothetical world where they could, my understanding would be that they would gain it directly through the vehicle. If there's something stored on the vehicle, they would gain access to it through the vehicle, not through Hyundai. The allegation is not that the data goes to a server in Hyundai's possession, where Hyundai could then access it and turn it over to law enforcement. If that were the allegation here, I think we would be in a very different footing. That would put us in the landscape of some of the cases that are cited by plaintiffs, where the allegation is that the defendant entity has control over the biometric data, either because the entity has the server on which the biometric information or biometric identifiers reside, or because the private entity is alleged to have exclusive access to and control on data that is even on a dispersed network, apparently, according to the allegations of those cases, like the Hazlitt case, accessible to the private entity. Can you, is there any reason we ought not certify this question? I think the- It's repetitive. It's a repeat question. Illinois Supreme Court hasn't spoken. We just haven't you know, one Illinois appellate case. Okay, let's call it two now, but both are different technologies. There's different types of technologies at issue. We keep coming back to this question. Respectfully, Judge, I don't think this would be the one to certify to the Illinois Supreme Court, because they've already answered the question in this case, in the Cothron case, where they said that these are active verbs. So I think- They haven't answered the question about possession in the server, which is really the question here. You know, must it be, must a plaintiff allege that it goes to a company's server, you know, or is the mere fact that the company controls the technology enough to meet those active verbs that Cothron talked about? So it's an extension, it's a extension of, it's not the exact question in Cothron. I think the GTV Samsung case maybe gets a little closer to the hard case that you're describing. That's a district court case, a federal district court case. It's not the Illinois courts telling us anything. I understand. I'm saying when we discuss certification, I think this case, I would say, represents the relatively easy case, where there's not even an allegation that the private entity has access to or control over data that resides on a server that the company does not control. So here it's not even a matter of an allegation that, like in the Hazlitt case, where there is alleged to be basically a differentiated network that resides on individuals' devices, but the defendant entity is alleged to have access to and can acquire control of the data on those devices. That's not even, not even that much is alleged here. So not only is there not an allegation that Hyundai Motor America has the server with the data, there's also not an allegation that Hyundai Motor America has the ability to acquire or gain access to the data, to the data that's on the FAS systems. So I don't think this presents a case for the Illinois Supreme Court. It's not a hard enough case. It's a relatively easy case, because where the Illinois Supreme Court has already said that these are active verbs that require a private actor, there is an absence of an allegation that the private entity at issue, in this case Hyundai Motor America, even had the ability to acquire possession or control of the data from the FAS network. So respectfully, I don't think this would be the one to go to the Illinois Supreme Court. I agree that there is a recurring issue over whether data has to leave a device in order to be actionable under BIPA. But even in those cases, the allegation is that the entity has access to the data on the device in order to make it a hard case. This is the easy case, because there's not even an allegation that Hyundai Motor America has access to the data on the device. And so if I'm following you, you say if a case was going to be certified, it should have been the Samsung case or should be the Samsung case, which is on appeal, as you know. I do know that that one is on appeal. I think that is, at least based on the allegations in that one, there are allegations there of access and control. So I'm certainly not trying to throw that one out there as sort of a sacrificial lamb, but I'm saying the allegations there make that a harder case. I still think the defendant has the right of it in that case, but I'm not the attorney in that case. I think here it's the relatively easy case. I see that my time has expired, unless there are any other questions. No, thank you. Thank you. Mr. Edelman? The portion of the statute which we rely upon uses the words collect and capture. Later portions of 14-15 use the words store, use, transmit, and disclose. I submit that the action of defendant's device in collecting or capturing is sufficient to trigger the statute. If it is not, you would have a rule of law which would allow businesses to engage in surreptitiously capturing biometric information through devices that they sell, without telling the consumer that this is going on at all. And I think Cawthron does not address this. If you treat Hundy's camera as the conduct of Hundy, then Hundy is doing the capturing. It's similar to the law of agency. Is the particular actor the responsibility of the defendant or the responsibility of someone else? We contend that the applicable test should be, and I think it's consistent with all of the cases, is that if a business installs and sets in motion a device which collects biometric information, it is responsible for the device until it transfers it to somebody who is informed what it is and what it does, including that it captures biometric information. And therefore, Hundy's camera is the action of Hundy. The information is in the car for some period of time. The car's computer processes it and the conclusion that the driver has been inattentive is something that can be retrieved by law enforcement, by a Hundy dealer, by Hundy, or anybody else who has the equipment to read the codes inside the computer. Unless your honors have some other questions, that concludes my remarks. Okay, thank you. We thank both parties and we will take the case under advisement.